**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**KARUNA MALLA, *et al.*,**

        *Plaintiffs*,

    **v.**                                **Civil No.: 1:25-cv-00379-JRR**

**MARCO RUBIO, *et al.*,**

        *Defendants*.

**MEMORANDUM OPINION**

Pending before the court is Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment. (ECF No. 8; the "Motion.") The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons that follow, by accompanying order, the Motion, construed as a motion to dismiss, will be granted.

## I.    BACKGROUND[1]

Plaintiffs Karuna Malla ("Plaintiff-Wife"), a U.S. citizen, and Jahid Shuvo ("Plaintiff-Husband"), an applicant for an immigrant visa, bring the instant mandamus action regarding the delay in scheduling Plaintiff-Husband's immigrant visa interview. (ECF No. 1 ¶¶ 1–2; the "Complaint.") Plaintiffs name as Defendants the Secretary of State, the Attorney General of the United States (now Pamela Bondi), Secretary of Homeland Security, Deputy Secretary of State (now Christopher Landau), Assistant Secretary of Consular Affairs (now Mora Namdar), Legal Advisor of the Department of State (now Reed D. Rubinstein), Director of U.S. Citizenship and Immigration Services ("USCIS") (now Joseph B. Edlow), U.S. Ambassador to Bangladesh (now

---

[1] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the Complaint. (ECF No. 1.) *See Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

Brent T. Christensen), U.S. Deputy Chief of Mission to Bangladesh (now Megan Bouldin), and Director of the National Visa Center.[2]

On January 20, 2023, Plaintiff-Wife filed a Form I-130 Petition for Alien Relative (the "I-130 Petition") for Plaintiff-Husband with USCIS. (ECF No. 1 ¶ 4.) USCIS approved the I-130 Petition on August 6, 2024, and forwarded it to the State Department's National Visa Center for processing. *Id.* ¶¶ 4–5. Plaintiff-Husband then completed his DS-260 Immigrant Visa Electronic Application and paid the requisite fees on August 14, 2024. *Id.* ¶ 5. Plaintiff-Husband's DS-260 application was complete—meaning "[a]ll required applicant documents [had] been received and approved"—as of October 7, 2024. (ECF No. 1 ¶ 5; ECF No. 1-2 at p. 16.)[3] The National Visa Center has yet to schedule Plaintiff-Husband's immigrant visa interview at the U.S. Embassy in Dhaka, Bangladesh. (ECF No. 1 ¶ 6.) As a result of the delay in scheduling his interview, "Plaintiffs are suffering ongoing injuries including extended family separation, family stress, increased legal expenses, anxiety, and mental anguish," especially because Plaintiff-Wife "is dealing with being the primary caretaker for her mother who is undergoing cancer treatment" in the United States. *Id.* ¶¶ 7, 44.

Plaintiffs initiated this action on February 7, 2025, asserting two claims for relief: Unreasonable Delay in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b) and 706(1) (Count I), and for relief under the Mandamus Act, 28 U.S.C. § 1361 (Count II). (ECF No. 1 ¶¶ 38–52.) Plaintiffs seek relief including, relevant here, that this court "[d]eclare that Defendants' delays in the scheduling of Plaintiff-[H]usband's DS-260 immigrant visa interview[] are unreasonable and in violation of the APA and the [Immigration and Nationality Act ('INA')],"

---

[2] The individual public official Defendants have changed since the filing of the Complaint as set forth herein. Pursuant to Federal Rule of Civil Procedure 25(d), Madam Clerk shall substitute the individual Defendants accordingly.
[3] References to this document are to CM/ECF pagination.

and compel Defendants "to perform their dut[ies]" to schedule and adjudicate Plaintiff-Husband's DS-260 immigrant visa interview and application. *Id.* at pp. 11–12.

## II.    LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(1)

"Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes dismissal for lack of subject matter jurisdiction." *Barnett v. United States*, 193 F. Supp. 3d 515, 518 (D. Md. 2016). Subject matter jurisdiction challenges may proceed as "either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting 'that the jurisdictional allegations of the complaint [are] not true.'" *Mayor & City Council of Balt. v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)).

In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192; *see Ministry of Defence of State of Kuwait v. Naffa*, 105 F.4th 154, 159 (4th Cir. 2024) (same).  Conversely, in a factual challenge, "the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192; *see Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 650 (4th Cir. 2018) (same). "In that circumstance, the court 'may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Trump*, 416 F. Supp. 3d at 479 (quoting *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004)).

"The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *United States ex rel. Fadlalla v. DynCorp Int'l LLC*, 402 F. Supp. 3d 162, 176 (D. Md. 2019) (citing *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999)). "In determining whether jurisdiction exists, 'the court may look beyond the pleadings and the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue.'" *Id.* at 176 (quoting *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003)).

Defendants here assert a facial challenge to the court's subject matter jurisdiction. Specifically, Defendants contend they have no discrete, non-discretionary duty to schedule a visa interview. Therefore, they argue, the court lacks both judicial review authority under the APA and authority to order mandamus relief. (ECF No. 8-1 at pp. 11–17.) *See Lovo v. Miller*, 107 F.4th 199, 205, 216 (4th Cir. 2024) (explaining that "[c]ourts may not . . . exercise jurisdiction over an APA claim if the claim falls under an exception to the APA's judicial-review provisions," and that, like the APA, "the Mandamus Act only permits federal courts to exercise jurisdiction if an agency has a clear duty to act").

### B. Federal Rule of Civil Procedure 12(b)(6)[4]

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint." *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017), *as amended* (Jan. 20, 2017) (quoting *Papasan v. Allain*, 478 U.S. 265, 283 (1986)). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

---

[4] Defendants move in the alternative for summary judgment, but do not ask the court to consider any documents outside the pleadings. Where the court concludes dismissal is warranted, and discovery has not yet commenced, the court declines to convert the Motion. *See McCray v. Maryland Dep't of Transp., Maryland Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014) (noting that "[i]n general, summary judgment should only be granted 'after adequate time for discovery'") (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)).

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'"  *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678).

A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level, thereby nudging its claims across the line from conceivable to plausible." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (citation modified) (quoting *Twombly,* 550 U.S. at 555, 570).  The plausibility requirement is not "a probability requirement but rather a mandate that a plaintiff 'demonstrate more than a sheer possibility that a defendant has acted unlawfully." *In re Birmingham*, 846 F.3d at 92 (quoting *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009)).  Reliance on "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" are insufficient.  *Twombly*, 550 U.S. at 555.

III.   **ANALYSIS**

Under the INA, a noncitizen married to a U.S. citizen may petition for an immigrant visa. *Lovo v. Miller*, 107 F.4th 199, 202 (4th Cir. 2024) (citing 8 U.S.C. §§ 1151(b)(2)(A)(i), 1153(a)(2)); *see Kerry v. Din*, 576 U.S. 86, 89 (2015) (explaining that statute "creates a special visa-application process for aliens sponsored by immediate relatives in the United States" (citation omitted)).   This type of visa is a family-based immigrant visa for an immediate relative of the petitioner.[5]  "Typically, that process requires that a noncitizen first be the beneficiary of an approved immigrant petition, such as a Form I-130," with USCIS.  *Lovo*, 107 F.4th at 202 (citation

---

[5]   U.S. DEP'T OF STATE, *Family Immigration*, https://travel.state.gov/content/travel/en/us-visas/immigrate/family-immigration.html [https://perma.cc/6MK6-RTJT] (last visited Mar. 16, 2026). *See United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) (noting that courts "routinely take judicial notice of information contained on state and federal government websites").

5

omitted).   The citizen-relative files a Form I-130 petition with USCIS on behalf of the noncitizen to have him "classified as an immediate relative." *Din*, 576 U.S. at 89; 8 C.F.R. § 204.1(a)(1), (b). If USCIS approves the petition for a noncitizen outside the United States, it sends it on to the State Department's National Visa Center.   8 C.F.R. § 204.2(a)(3).   Once an applicant submits the requisite fees, forms, and supporting documents to the National Visa Center, the case is "documentarily complete," and the National Visa Center schedules the applicant's interview "based on the availability of appointments offered at the Embassy/Consulate."[6]   "Upon visa availability, [the National Visa Center] usually schedules appointments in the chronological order of the documentarily complete applicants."  9 Foreign Affairs Manual ("FAM") 504.4-6.[7]

An immigrant visa interview occurs before a U.S. consular officer.   8 U.S.C. § 1202(d). Once a visa application is properly completed and executed before a consular officer, "the consular officer must issue the visa, refuse the visa under INA 212(a) or 221(g) or other applicable law or, pursuant to an outstanding order under INA 243(d), discontinue granting the visa."   22 C.F.R. § 42.81(a); *see Ghadami v. United States Dep't of Homeland Sec.*, No. CV 19-00397 (ABJ), 2020 WL 1308376, at *1 (D.D.C. Mar. 19, 2020) (same).   At all times, the burden of proof is upon a person making an application for a visa "to establish that he is eligible to receive such visa . . . , or is not inadmissible under any provision of this chapter."  8 U.S.C. § 1361.

---

[6] U.S. DEP'T OF STATE, *Step 2: Begin National Visa Center (NVC) Processing*, https: //travel.state.gov/content/travel/ en/us-visas/immigrate/the-immigrant-visa-process/step-1-submit-a-petition/step-2-begin-nvc-processing.html [https://perma.cc/4M49-UJH8] (last visited Mar. 16, 2026).

[7] The court takes judicial notice of the Department of State's publicly available FAM, which Plaintiffs expressly rely upon in their Complaint. *See, e.g.*, ECF No. 1 at ¶¶ 29–31; *see Fairfax v. CBS Corp.*, 2 F.4th 286, 292 (4th Cir. 2021) (providing that, "[i]n evaluating a complaint at this stage, a court also may consider documents integral to and relied upon in the complaint . . . so long as the plaintiff does not question their authenticity . . . .).  By way of background, according to the State Department public website: "The Foreign Affairs Manual (FAM) and associated Handbooks (FAHs) are a single, comprehensive, and authoritative source for the Department's organization structures, policies, and procedures that govern the operations of the State Department, the Foreign Service and, when applicable, other federal agencies.  The FAM (generally policy) and the FAHs (generally procedures) together convey codified information to Department staff and contractors so they can carry out their responsibilities in accordance with statutory, executive and Department mandates."  U.S. DEP'T OF STATE, *Foreign Affairs Manual (FAM)*, https://fam.state.gov/ [https://perma.cc/2WRW-Z92L] (last visited Mar. 16, 2026).

### A. Jurisdictional Challenge

As relayed above, Defendants first argue that the court lacks jurisdiction to hear Plaintiffs' mandamus and APA claims based on unreasonable delay because Defendnats do not have a clear, non-discretionary duty to schedule an immigrant visa interview. (ECF No. 8-1 at pp. 11–12.)

"[T]he APA does not permit judicial review of a challenge to 'agency action [that] is committed to agency discretion by law.'" *Lovo v. Miller*, 107 F.4th 199, 210 (4th Cir. 2024) (quoting 5 U.S.C. § 701(a)(2)). "Under § 706, [a court] may only compel 'agency action' that has been 'unlawfully withheld or unreasonably delayed.'" *Gonzalez v. Cuccinelli*, 985 F.3d 357, 365 (4th Cir. 2021) (quoting 5 U.S.C. § 706(1)). A claim that agency action is unreasonably delayed "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required* to take." *Lovo*, 107 F.4th at 210 (emphasis in original) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)). "But where an agency is *not required* to do something, [courts] cannot compel the agency to act—let alone to act faster." *Gonzalez*, 985 F.3d at 366 (emphasis in original).

"Similar to the APA, the Mandamus Act only permits federal courts to exercise jurisdiction if an agency has a clear duty to act." *Lovo*, 107 F.4th at 216. Specifically, "to show that it is entitled to mandamus relief, a plaintiff must show, among other things, that it has a 'clear and indisputable right to the relief sought' and that the responding party has a 'clear duty to do the specific act requested.'" *Cumberland Cnty. Hosp. Sys., Inc. v. Burwell*, 816 F.3d 48, 52 (4th Cir. 2016) (quoting *United States ex rel. Rahman v. Oncology Assocs., P.C.,* 198 F.3d 502, 511 (4th Cir. 1999)). "The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. U. S. Dist. Ct. for N. Dist. of California*, 426 U.S. 394, 402 (1976) (citing cases).

Plaintiffs' attempts to demonstrate a clear, non-discretionary duty fail in multiple regards. First, Plaintiffs cite several sources in support of their contention that Defendants have a clear, non-discretionary duty—"8 U.S.C. §1571(b)" (as to Count I, APA), and "INA §221, 8 C.F.R. §1201, and 9 FAM 504.9" (as to Count II, Mandamus)—two of which are patently deficient.[8] (ECF No. 1 ¶¶ 41, 46.)  The court cannot locate "8 C.F.R. §1201," and Plaintiffs fail to identify a specific provision creating the requisite duty within section 221 of the INA (8 U.S.C. § 1201). These deficiencies are even more problematic because Plaintiffs fail to respond to Defendants' challenge as to same; thus, Plaintiffs concede the point.  *See Stenlund v. Marriott Int'l, Inc.*, 172 F. Supp. 3d 874, 887 (D. Md. 2016) ("In failing to respond to [defendant's] argument, Plaintiff concedes the point."); *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (explaining that a plaintiff "abandon[s]" her claim where she failed to respond to argument).

Further, as to the remaining cited provisions, the court observes that courts have rejected finding a clear, non-discretionary duty to adjudicate an application by a certain time pursuant to 8 U.S.C. § 1571(b) or the FAM.  *See, e.g., Baradaran v. Rubio*, No. 24-CV-2946 (DLF), 2025 WL 2506546, at *3 (D.D.C. Sept. 2, 2025) (noting that § 1571 applies to the Immigration and Naturalization Service, not the Department of State, and creates no legal duty to act as to the Department); *Ramizi v. Blinken*, 745 F. Supp. 3d 244, 263 (E.D.N.C. 2024), *appeal dismissed,* No. 24-2008, 2024 WL 5509498 (4th Cir. Dec. 9, 2024) (finding "FAM imposes no mandatory duty

---

[8] Plaintiffs do not, as Defendants appear to contend, cite 5 U.S.C. § 555(b) as the source of Defendants' duty to schedule a visa interview.  (ECF No. 1 ¶¶ 41, 46.)  Even if they had, however, the court would not find it persuasive; courts in this district have repeatedly rejected § 555(b) as a source of a clear, non-discretionary duty.  *See, e.g., Aghamohammadi v. Rubio*, No. CV DKC 24-2801, 2025 WL 2687343, at *9 (D. Md. Sept. 19, 2025); *Sakhi v. Blinken*, No. CV DLB-24-1376, 2025 WL 904141, at *5–6 (D. Md. Mar. 25, 2025); *Ishaq v. Schofer*, No. 8:24-CV-00207-TJS, 2024 WL 3729107, at *5 (D. Md. Aug. 8, 2024).

on Defendants"); *Babamuradova v. Blinken*, 633 F. Supp. 3d 1, 16 (D.D.C. 2022) (finding FAM "guidelines do not carry the force of law").

The court also notes that other courts (both in and outside this Circuit) have found no clear, non-discretionary duty to schedule an immigrant visa interview. *See, e.g.*, *Niknam v. United States Dep't of State*, No. 23-CV-01380-PAB-SBP, 2024 WL 709636, at *3 (D. Colo. Feb. 21, 2024) (noting numerous courts have concluded State Department officials do not have a mandatory, non-discretionary duty to schedule a visa interview for family-based visa petition); *Niknam v. United States Dep't of State*, No. 23-CV-01380-PAB-SBP, 2024 WL 709636, at *3 (D. Colo. Feb. 21, 2024) (same); *Mohamed v. United States Dep't of State*, No. CV ADC-23-1857, 2024 WL 2805290, at *3 (D. Md. May 31, 2024) (same); *Mueller v. Blinken*, 682 F. Supp. 3d 528, 537 (E.D. Va. 2023) (finding no clear non-discretionary duty under 8 U.S.C. § 1201 or 22 C.F.R. § 42.81(a) to proceed with immigrant visa interview for family-based visa petition); *Ali v. United States Dep't of State*, 676 F. Supp. 3d 460, 470 (E.D.N.C. 2023) (finding no specific, non-discretionary duty to conduct immigrant visa interview or family-based based visa petition); *Khan v. Bitter*, No. 22 C 6617, 2023 WL 6311561, at *3 (N.D. Ill. Sept. 28, 2023) (finding weight of authority supports there exists no clear, nondiscretionary duty to schedule family-based immigrant visa application interview); *Prince v. Blinken*, No. 2:23CV100-PPS/APR, 2023 WL 5670158, at *3 (N.D. Ind. Aug. 31, 2023) (finding scheduling of visa application interview is a discretionary function of Department of State); *Throw v. Mayorkas*, No. 3:22-CV-05699-DGE, 2023 WL 2787222, at *3 (W.D. Wash. Apr. 5, 2023) (finding "no statutory or regulatory obligation requiring the State Department to schedule a consular interview by a date certain" for family-based visa petition); *Jamoussian v. Blinken*, No. CV2110980KMAME, 2022 WL 538424, at *2 (D.N.J. Feb. 23, 2022) (finding, on a Form I-129F petition for alien fiancé, no duty to act within a certain period of time

"with respect to a State Department consular officer's scheduling of a consular interview").[9] Again, by their failure to respond on this issue, Plaintiffs fail to distinguish the instant action to the court.

Based on Plaintiffs' Complaint allegations and failure to respond to Defendants' challenge, the court is not persuaded Plaintiffs demonstrate a clear, non-discretionary duty to invoke this court's jurisdiction for APA review or a clear duty to act for Mandamus Act relief. Even assuming there may exist a basis for the court to find support for the requisite duty, Plaintiffs fail to meet their burden. *Cf. Majlesi, v. Rubio*, No. CV 25-614 (LLA), 2026 WL 654377, at *6 (D.D.C. Mar. 9, 2026) (collecting cases finding both a duty to complete adjudication of visa applicants and cases to the contrary); *Asim v. Blinken*, No. CV 24-638 (JEB), 2024 WL 3338778, at *3 (D.D.C. July 8, 2024) (citing cases and noting "the legal quagmire of differing views on" whether the State Department or U.S. Embassy has a clear, non-discretionary duty "to schedule a visa interview for any particular noncitizen").[10]

### B. Unreasonable Delay[11]

In any event, even had Plaintiffs met their burden to identify a clear, non-discretionary duty to schedule Plaintiff-Husband's immigrant visa interview, dismissal is nonetheless warranted because they fail to plead a plausible claim of unreasonable delay.

---

[9] As discussed *infra*, the court acknowledges that other courts have found differently, with the Honorable James E. Boasberg referring to the question as a "legal quagmire." *Asim v. Blinken*, No. CV 24-638 (JEB), 2024 WL 3338778, at *3 (D.D.C. July 8, 2024). Regardless, Plaintiffs fail to offer any argument one way or another.

[10] Because the court concludes Plaintiffs fail to identify a clear, non-discretionary duty to act, and that Plaintiffs' unreasonable delay claim fails to state a claim, the court declines to reach Defendants' argument that scheduling visa interviews is committed to agency discretion by law. *See, e.g.*, *Ekeocha v. U.S. Dep't of State*, No. CV 25-454 (RC), 2025 WL 3228063, at *4 (D.D.C. Nov. 19, 2025) (declining to address same where plaintiff failed to plausibly allege unreasonable delay); *Hussein v. Bitter*, No. CV 24-3201 (ABJ), 2025 WL 1768092, at *3 (D.D.C. June 26, 2025) (same).

[11] Because the court concludes that Plaintiffs fail to plead plausible claims under the APA and Mandamus Act, it need not reach Defendants' arguments that Rule 12(b)(6) dismissal is warranted as to particular Defendants on grounds that Plaintiffs sue officials who cannot provide the requested relief.

Because "[t]he standard by which a court reviews . . . agency inaction is the same under both § 706(1) of the APA and the Mandamus Act," *see Jahangiri v. Blinken*, No. CV DKC 23-2722, 2024 WL 1656269, at \*14 (D. Md. Apr. 17, 2024) (quoting *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 96 (D.D.C. 2020)); *see also Ishaq*, 2024 WL 3729107, at \*3, the court considers the sufficiency of these claims together, *see Logan v. Blinken*, No. CV 21-2275 (FYP), 2022 WL 3715798, at \*4 (D.D.C. Aug. 29, 2022) (noting that "[b]ecause 'the standard for undue delay under the Mandamus Act . . . is identical to the APA standard,' the Court treats the two claims as one") (quoting *Kangarloo v. Pompeo*, 480 F. Supp. 3d 134, 142 (D.D.C. 2020)).

The APA provides that an agency "within a reasonable time . . . shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). A claim brought pursuant to 5 U.S.C. § 706(1) "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Norton v. Southern Utah Wilderness All.*, 542 U.S. 55, 64 (2004). "If an agency fails to comply with this requirement, the APA authorizes courts to 'compel agency action unlawfully withheld or unreasonably delayed . . . .'" *Begum v. U.S. Dep't of State*, No. 1:22-CV-00478-JMC, 2022 WL 16575703, at \*5 (D. Md. Oct. 31, 2022) (quoting 5 U.S.C. § 706(1)). In assessing claims of unreasonable agency delay, courts generally consider six factors or considerations, as set forth by the D.C. Circuit in *Telecommunications Research & Action Center v. F.C.C.*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"):

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id.* at 80 (citations omitted).

While a "claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage," *Gonzalez v. Cuccinelli*, 985 F.3d 357, 375 (4th Cir. 2021), a plaintiff does not automatically "survive[] a motion to dismiss by merely alleging that a processing delay is unreasonable." *Ahmed v. U.S. Dep't of Homeland Sec.*, No. 21-CV-893 (APM), 2022 WL 424967, at *5 (D.D.C. Feb. 11, 2022). The Complaint is "still subject to the standard for pleadings under *Twombly* and *Iqbal*," and the court therefore must determine whether Plaintiffs allege facts sufficient "to state a plausible claim for unreasonable administrative delay." *Id.* (quoting *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 50 (D.D.C. 2021)). As such, courts routinely consider whether a plaintiff states a claim of unreasonable delay under the APA on a motion to dismiss. *See, e.g.*, *Aghamohammadi v. Rubio*, No. CV DKC 24-2801, 2025 WL 2687343, at *11 (D. Md. Sept. 19, 2025) (citing cases); *Mokuolu v. Mayorkas*, No. CV RDB-24-817, 2024 WL 4783542, at *2 (D. Md. Oct. 1, 2024); *Jahangiri v. Blinken*, No. CV DKC 23-2722, 2024 WL 1656269, at *1 (D. Md. Apr. 17, 2024) (citing cases); *Begum*, 2022 WL 16575703, at *1; *Ahmed*, 2022 WL 424967, at *1.

### 1. *TRAC Factors One and Two*

"The first factor . . . is typically considered together with the second *TRAC* factor." *Arab v. Blinken*, 600 F. Supp. 3d 59, 69 (D.D.C. 2022); *see also Mokuolu*, 2024 WL 4783542, at \*6 (D. Md. Oct. 1, 2024) (noting that "[s]ome courts have deemed the first *TRAC* factor the 'most important' of the *TRAC* analysis."). In analyzing the first two *TRAC* factors, the court focuses on "whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Int. v. U.S. Food & Drug Admin.*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014); *see Jahangiri*, 2024 WL 1656269, at \*8 (same); *Begum*, 2022 WL 16575703, at \*7 (explaining the first two factors "focus on the reasonableness of the delay and whether Congress has set a timeline for the completion of the action in question"). "Whether the State Department has a 'rule of reason' 'cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Jahangiri*, 2024 WL 1656269, at \*8 (quoting *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317–18 (D.D.C. 2020)).

"There is no statutory or regulatory timeline that provides a 'rule of reason' to govern the State Department's adjudication of a visa application." *Ahmed*, 2022 WL 424967, at \*5; *see Ali v. United States Dep't of State*, 676 F. Supp. 3d 460, 471 (E.D.N.C. 2023) (same). Instead of providing such a timeline, "Congress has given the agencies wide discretion in the area of immigration processing." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153-54 (D.D.C. 2017); *see Alshawy v. U.S. Citizenship and Immigr. Servs.*, No. 21-2206 (FYP), 2022 WL 970883, at \*5 (D.D.C. Mar. 30, 2022) (explaining that Congress gave the State Department broad authority with regard to visa applications, "specifically omitting 'substantive standards against which the

Secretary's determination could be measured'") (quoting *Legal Assistance for Vietnamese Asylum Seekers v. U.S. Dep't of State*, 104 F.3d 1349, 1353 (D.C. Cir. 1997)).

"Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Sarlak v. Pompeo*, No. CV 20-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). "No bright lines have been drawn in this context, but '[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable.'" *Id.* (citing *Yavari v. Pompeo*, No. 2:19-CV-02524-SVW-JC, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019)); *see Mokuolu*, 2024 WL 4783542, at *7 (same); *Dyvonyak v. Mayorkas*, No. 23-CV-16528, 2024 WL 3520058, at *2 (N.D. Ill. July 24, 2024 (same).

The court analyzes the relevant period of delay by calculating the "earliest possible time that the Embassy could have scheduled the interview." *Alshawy*, 2022 WL 970883, at *6 (D.D.C. Mar. 30, 2022). Additionally, courts tend to "focus on the delay' from the last Government action 'to the issuance of the opinion'" as opposed to the date of the filing of the complaint. *Mahmood v. U.S. Dep't of Homeland Sec.*, No. 21-1262 (RC), 2021 WL 5998385, at *6 (D.D.C. Dec. 20, 2021) (quoting *Brzezinski v. U.S. Dep't of Homeland Sec.*, No. CV 21-376, 2021 WL 4191958, at *4, n.3 (D.D.C. Sept. 15, 2021)). Accordingly, here, the court considers the timeframe from when Plaintiff-Husband's DS-260 application was documentarily complete to the present, which amounts to a little over 17 months.

In accordance with the caselaw cited above, a delay of 17 months is not unusual, and is often not unreasonable. Indeed, courts have found delays of this length (and longer) in scheduling immigrant visa interviews not unreasonable. *See, e.g.*, *Dennis v. Blinken*, No. 1:22-CV-02522-JRR, 2023 WL 4764576, at *7 (D. Md. July 26, 2023) (regarding a period of 30 months); *Ali*, 676

F. Supp. 3d at 471 (regarding a period of over two years); *Mueller v. Blinken*, 682 F. Supp. 3d 528, n.7 Va. 2023) (regarding a period of 17 months); *Begum*, 2022 WL 16575703, at *7 (regarding a period of 33 months). *See also generally Mokuolu*, 2024 WL 4783542, at *7 (D. Md. Oct. 1, 2024) (recognizing that "delays of two years or less are generally reasonable"). Even considering the date the National Visa Center began processing Plaintiff-Husband's DS-260 application, the delay would still be well under two years.

Conclusion that the delay is not unreasonable is further supported where it is undisputed that Defendants utilize a first-in, first-out methodology for scheduling immigrant visa interviews, which has been recognized as a rule of reason. *See, e.g.*, *Mokuolu*, 2024 WL 4783542, at *6 (citations omitted); *Orozco v. Blinken*, No. 22 C 5134, 2023 WL 4595377, at *4 (N.D. Ill. July 18, 2023) (describing first-in, first-out as "a recognized rule of reason"); *Memon v. Blinken*, No. CV 22-0754 (CKK), 2023 WL 1438396, at *2 (D.D.C. Feb. 1, 2023) (recognizing that "courts in this jurisdiction have regularly found that the Government applies a 'rule of reason' to the review of visa petitions by adjudicating applications in the order they were filed"); *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 51 (D.D.C. 2021) ("Courts have recognized that a 'first-in, first-out method' satisfies the rule-of-reason inquiry.") (citing cases); *cf. Gonzalez v. Cuccinelli*, 985 F.3d 357, 375 (4th Cir. 2021). Plaintiffs do not allege that Defendants have in some way deviated from their typical practice—the first-in, first-out method; nor does the record support such an inference. *See Mokuolu*, 2024 WL 4783542, at *6 (discussing same in the context of VAWA self-petition). Accordingly, these factors weigh in Defendants' favor.[12]

---

[12] Plaintiffs' reference to *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Pompeo*, No. 18-CV-01388 (TSC), 2019 WL 4575565, at *6 (D.D.C. Sept. 20, 2019), which concerns delay in adjudicating special immigrant visa applications pursuant to provisions in the Afghan Allies Protection Act of 2009 and the Refugee Crisis in Iraq Act of 2007 is not persuasive where the visa applications here are not brought pursuant to these special provisions.

## 2. *TRAC* Factors Three and Five

"'The third and fifth factors are often considered together, and require the [c]ourt to consider Plaintiffs' interests, health, and welfare,' and the prejudice to those interests from delay." *Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 12 (D.C. Cir. 2021) (quoting *Thakker v. Renaud*, No. 20-cv-1133 (CKK), 2021 WL 1092269, at *7 (D.D.C. Mar. 22, 2021) (citation omitted)). "To evaluate those interests, courts consider a plaintiff's interests alongside those of similarly situated individuals." *Mokuolu*, 2024 WL 4783542, at *7; *see Dyvonyak*, 2024 WL 3520058, at *3 (same).

Plaintiffs allege that Plaintiff-Wife has suffered a deterioration of her physical and mental health by their separation, especially because her mother is undergoing cancer treatment. (ECF No. 75 ¶ 55.) Plaintiffs allege Plaintiff-Wife has been diagnosed with physical and mental health conditions as a result. *Id.* While the court is cognizant that it must consider Plaintiffs' asserted interests alongside others involved in this same process, the court is satisfied that Plaintiffs plausibly allege facts such that *TRAC* factors three and five weigh in their favor based on the hardship they face in their family separation. *See, e.g.*, *Begum*, 2022 WL 16575703, at *9 (finding *TRAC* factors three and five weighed in favor of plaintiff based on family separation); *Nusrat v. Blinken*, No. CV 21-2801 (TJK), 2022 WL 4103860, at *7 (D.D.C. Sept. 8, 2022) (same).

## 3. *TRAC* Factor Four

The fourth *TRAC* factor considers "the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. This factor calls for the court to consider "how a court order in [the] [p]laintiff's favor would shift existing agency priorities." *Ahmed*, 2022 WL 424967, at *6. The fourth factor carries significant weight. *See Begum*, 2022 WL 16575703, at *8 (quoting *Ahmed*, 2022 WL 424967, at *6). Indeed, "[c]ourts often find this factor to 'carr[y] the greatest weight' and have 'refused to grant relief, even [though] all the other

factors considered in *TRAC* favored it, where a judicial order putting [the petitioner] at the head of the queue [would] simply move[ ] all others back one space and produce[ ] no net gain.'" *Jahangiri*, 2024 WL 1656269, at *11 (quoting *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 319 (D.D.C. 2020)).

"[V]isa processing capacity [is] a 'zero-sum game' and therefore . . . the fourth *TRAC* factor [weighs] in favor of the government because 'granting [p]laintiff[s'] request to expedite would necessarily mean additional delays for other applicants—many of whom undoubtedly face hardships of their own.'" *Aghamohammadi v. Rubio*, No. CV DKC 24-2801, 2025 WL 2687343, at *14 (D. Md. Sept. 19, 2025) (alterations in original) (quoting *Jahangiri*, 2024 WL 1656269, at *12). It "requires an assessment of the impact that expediting the delayed action would have on other agency priorities . . . ." *Logan v. Blinken*, No. 21-2275 (FYP), 2022 WL 3715798, at *6 (D.D.C. Aug. 29, 2022). "[F]ederal courts have rejected plaintiffs' § 706(1) claims where the only relief would create a 'line-skipping concern' relative to other petitioners." *Mokuolu*, 2024 WL 4783542, at *8 (quoting *Dyvonyak*, 2024 WL 3520058, at *3); *see Begum*, 2022 WL 16575703, at *8 (finding fourth *TRAC* factor weighed in favor of defendants where plaintiff effectively requested to "jump past all others who are undergoing the application procedure"); *Logan*, 2022 WL 3715798, at *6 (explaining that court intervention is typically "unwarranted where 'a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain'") (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003)); *Nusrat*, 2022 WL 4103860, at *7 (explaining that fourth factor favored defendants where plaintiff "effectively ask[ed] the Court to 'reorder agency priorities' and 'move all others back one space and produce no net gain'") (citations omitted)).

17

As in the above-referenced cases, Plaintiffs here seek to compel Defendants to effectively move Plaintiff-Husband's application to the front of the line.  Ultimately, the relief Plaintiffs seek is precisely what courts seek to avoid—a reordering of the applicant queue when no net gain in such adjudications is achieved as a result.  *Tate v. Pompeo*, 513 F. Supp. 3d 132, 149 (D.D.C. 2021).  Moreover, Plaintiffs do not allege they were "singled . . . out for mistreatment," or otherwise subject to unequal (or comparatively inequitable) treatment.[13]  *See Aghamohammadi*, 2025 WL 2687343, at *14 (quoting *In Re Barr Lab'ys, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)).  The fourth *TRAC* factor therefore favors Defendants.[14]

### 4.  TRAC *Factor Six*

The sixth factor "reminds courts that they 'need not find any impropriety . . . to hold that agency action is unreasonably delayed.'"  *Meyou v. U.S. Dep't of State*, No. 21-2806, 2022 WL 1556344, at *5 (D.D.C. May 17, 2022) (quoting *TRAC*, 750 F.2d at 80).  Plaintiffs do not allege Defendants have acted in bad faith.  Accordingly, factor six is neutral.  *See, e.g.*, *Aghamohammadi*, 2025 WL 2687343, at *14; *Mokuolu*, 2024 WL 4783542, at *6 n.13; *Begum*, 2022 WL 16575703, at *9; *Jahangiri*, 2024 WL 1656269, at *12; *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 168 (D.D.C. 2021).

### 5.  *Weighing the TRAC Factors*

In view of the foregoing analysis of the *TRAC* factors, the court concludes that Plaintiffs fail to state a plausible claim of unreasonable delay.  *See, e.g.*, *Jahangiri*, 2024 WL 1656269, at *12 (finding similarly where factors one, two, and four favored defendants, factors three and five favored plaintiffs, and factor six was neutral); *Begum*, 2022 WL 16575703, at *9 (finding same);

---

[13] To the contrary, Plaintiffs appear to identify significant system-wide delays in adjudicating immigrant visa applications.  (ECF No. 9 at pp. 6–7.)

[14] For the reasons discussed above, the court finds Plaintiffs' reference to *Aslam v. Mukasey*, 531 F. Supp. 2d 736, 745 (E.D. Va. 2008), on this point unavailing.

*Meyou*, 2022 WL 1556344, at *5 (same). "The hardship faced by [Plaintiffs], while no doubt significant, is outweighed by the rule of reason supplied by the case law and the fact that granting relief would be at the expense of others without any net gain." *Ahmed*, 2022 WL 424967, at *6. "This conclusion 'does not mean that the Government's delay in processing [the] visa application will remain reasonable indefinitely.' But, as of now, [Plaintiffs have] failed to allege a plausible unreasonable delay claim under the APA or Mandamus Act." *Meyou*, 2022 WL 1556344, at *5 (quoting *Mahmood v. U.S. Dep't of Homeland Sec.*, No. CV 21-1262 (RC), 2021 WL 5998385, at *9 (D.D.C. Dec. 20, 2021)). The court will therefore grant the Motion and dismiss Plaintiffs' Complaint.

IV.    **CONCLUSION**

For the reasons set forth herein, by separate order, Defendant's Motion (ECF No. 8), construed as a motion to dismiss, will be granted.


Date: March 16, 2025                                                        /S/

                                                                       _____
                                                                       Julie R. Rubin
                                                                       United States District Judge


19